UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY MORENO,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 20-cv-05608-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REVERSING THE DENIAL OF BENEFITS; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>[Re: ECF 19, 22] |

    Plaintiff Anthony Moreno ("Moreno") appeals a final decision of Defendant Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. Moreno asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, alternatively, to remand for further administrative proceedings. The parties' cross-motions for summary judgment have been fully briefed, and the matter has been submitted without oral argument pursuant to Civil Local Rule 16-5.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in place of former Commissioner of Social Security Andrew Saul. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1  For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Moreno's motion, DENIES the Commissioner's motion, REVERSES the denial of benefits, and REMANDS for further administrative proceedings.

## I. BACKGROUND

Moreno was born on May 25, 1961. Admin. Record ("AR") 150, ECF 16. He has a high school education, is able to communicate in English, and has past relevant work in construction, performing the duties of a construction project manager and a construction worker. AR 52, 150-53. Moreno filed an application for DIB on August 18, 2017, claiming a disability onset date of January 5, 2008. AR 143-146. He claims disability due to several impairments, including diabetes, amputated toes, high blood pressure, sleep apnea, high cholesterol, and anxiety. AR 161. For purposes of his Title II claim, Moreno's date last insured was June 30, 2012. AR 15.

Moreno's application was denied initially and upon reconsideration. AR 56-74. A hearing before an administrative law judge ("ALJ") was held on October 1, 2019, at which Moreno and a vocational expert testified. AR 25-55. During the hearing, Moreno's counsel asked to amend the disability onset date from January 5, 2008 to May 24, 2011. AR 53.

The ALJ issued a written decision on December 23, 2019, acknowledging Moreno's request to amend the disability onset date but evaluating Moreno's claim based on the original alleged onset date of January 5, 2008. AR 15-21. The ALJ found that Moreno was not disabled at any time between the alleged onset date of January 5, 2008 and the date last insured of June 30, 2012, and denied benefits on that basis. AR 21. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. AR 1-6.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *See id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

### B. Standard for Determining Disability

A claimant seeking DIB under Title II must establish disability on or prior to the date last insured. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Determination of the date last insured involves a calculation of the number of quarters the claimant was employed within a certain time frame. *See* 42 U.S.C. § 423.

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual

3

1   functional capacity, the claimant can still do his or her past relevant work; and (5) whether the

2   claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

3   Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity

4   ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at

5   1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the

6   Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.

7   2009).

**III.   DISCUSSION**

Below, the Court summarizes the ALJ's decision denying benefits. The Court then addresses Moreno's challenges to the ALJ's decision and the Commissioner's response thereto.

**A.   ALJ's Decision**

At step one, the ALJ determined that Moreno did not engage in substantial gainful activity during the period between his original alleged onset date of January 5, 2008 through his date last insured of June 30, 2012. AR 17.

At step two, the ALJ found that: "Through the date last insured, the claimant had the following medically determinable impairments: diabetes mellitus, amputated toes, hypertension, obstructive sleep apnea (OSA), hyperlipidemia and anxiety." AR 17. However, the ALJ found that these impairments were not severe, either separately or in combination. AR 17-18. Based on that step two determination, the ALJ concluded that Moreno was not disabled at any time from January 5, 2008, the original alleged onset date, through June 30, 2012, the date last insured. AR 21. The ALJ did not reach steps three, four, or five.

**B.   Moreno's Challenges to the ALJ's Decision**

Moreno challenges the ALJ's step two determination that he did not have a severe impairment or combination of impairments prior to his date last insured, June 30, 2012.

A finding of disability requires a severe medically determinable physical or mental impairment, or combination of impairments, lasting more than 12 months. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. § 404.1520(c). "Basic work activities" means

4

"the abilities and aptitudes necessary to do most jobs." *Id*. § 404.1522(b).  Examples of basic work activities set forth in the regulations include:  "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id*.

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).  "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks and citation omitted).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id*. at 687 (internal quotation marks and citation omitted).  Thus, in reviewing the ALJ's decision in the present case, this Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Moreno] did not have a medically severe impairment or combination of impairments." *Id*.

In making a step two determination, the ALJ may reject a claimant's subjective complaints only for "clear and convincing" reasons where there is objective evidence of an underlying impairment that reasonably could produce the alleged symptoms.  *Webb*, 433 F.3d at 687; *see also Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  The claimant is not required to show that his impairments reasonably could be expected to cause the severity of the alleged symptoms; he need show only that his impairments reasonably could have cause some degree of the alleged symptoms. *See id.*  The only exception to the clear and convincing requirement is where the ALJ makes a finding +that the claimant is malingering.  *See id.*

Moreno contends that the ALJ erred in evaluating the medical evidence and in rejecting his testimony regarding his symptoms.  The Court discusses these contentions in turn.

5

### 1.     ALJ's Evaluation of the Medical Evidence

The record contains almost 2,000 pages of medical evidence, spanning a period between June 2008 and August 2019. AR 231-2154. The ALJ's task at step two of the sequential analysis was to determine whether the medical evidence in the record clearly established that Moreno did not have a medically severe impairment or combination of impairments prior to his date last insured, June 30, 2012. The ALJ concluded that the medical evidence established that Moreno "had the following medically determinable impairments: diabetes mellitus, amputated toes, hypertension, obstructive sleep apnea (OSA), hyperlipidemia and anxiety." AR 17. However, the ALJ found that those impairments did not limit Moreno's ability to work, *i.e.*, were not severe prior to Moreno's date last insured. AR 18.

Moreno argues that the ALJ erred in failing to discuss medical evidence regarding his condition during the relevant time frame prior to his date last insured, and instead focusing primarily on medical evidence regarding his condition after his date last insured. The bulk of the ALJ's discussion of the medical evidence does focus on records generated after Moreno's date last insured of June 30, 2012. For example, the ALJ discussed Moreno's physical activities in October 2012, August 2014, and February 2016; failure to follow up for a diabetic shoe referral in April 2013; post-surgical follow-up in April 2013; x-rays taken in January 2014 and December 2014; diagnosis of obstructive sleep apnea in October 2015; anxiety suffered in October 2015; clinical findings in April 2016; toe amputations in August 2016 and July 2017; and diabetes medication in August 2017. AR 19-20. The ALJ did not explain how evidence regarding the period after Moreno's date last insured, June 30, 2012, led him to conclude that Moreno had no severe impairment or combination of impairments before his date last insured.

The ALJ devoted only a few sentences of his decision to medical evidence relating to the period before Moreno's date last insured. The ALJ observed that Moreno took hypertension medication in August 2010, and that his blood pressure was 123/80. AR 19. The ALJ also made a passing reference to mild degenerative changes at the metatarsophalangeal joint in November 2011. *Id*. The ALJ did not explain how those records established that Moreno's medically determinable impairments – diabetes mellitus, amputated toes, hypertension, obstructive sleep

6

apnea (OSA), hyperlipidemia and anxiety – were not severe prior to his date last insured. *Id*.

Moreno asserts that the ALJ simply ignored relevant medical evidence in the record. Moreno points out that the Commissioner's consulting physician on reconsideration, Dr. Jennifer Duffy, listed more than a dozen medical records for the period prior to Moreno's date last insured. AR 68. Moreno also directs the Court to medical evidence in the record dating from before his date last insured relating to his diabetes and associated neuropathy and ulcers; that evidence was not addressed by the ALJ. AR 572-95 (2011 records re debridement and treatment of ulcers on feet); AR 609-25 (2010 records re knee and elbow pain); 641-57 (2008 records re painful lumps/ulcers on soles of feet and on hands).

Given the ALJ's focus on medical evidence for the period after Moreno's date last insured, and the ALJ's failure to address relevant medical evidence for the period prior to the date last insured, the Court concludes that the ALJ failed to identify substantial evidence in the record clearly establishing that Moreno had no medically severe impairment or combination of impairments.

The Commissioner argues that the ALJ's decision was supported by the opinions of the Commissioner's consulting physicians on initial review and on reconsideration. In particular, the Commissioner refers to the opinion of Dr. Funkenstein on initial review (AR 60-62), and the opinion of Dr. Cepeda on reconsideration (AR 68-70), both concluding that there was insufficient evidence in the record to support Moreno's claim of disability. The Court observes that the opinion on reconsideration was prepared by Dr. Jennifer Duffy; the Court cannot locate the name "Cepeda" on that opinion. AR 68-70. In any event, the ALJ did not mention or rely on opinions of Dr. Funkenstein, Dr. Duffy, or Dr. Cepeda. This Court cannot uphold the ALJ's decision based on evidence that the ALJ did not consider – the Court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). Accordingly, the Commissioner's argument based on the opinions of the agency's consulting physicians is without merit.

For these reasons, the Court finds that the ALJ erred in evaluating the medical evidence.

### 2.     ALJ's Rejection of Moreno's Symptom Testimony

Moreno contends that the ALJ erred in rejecting his testimony regarding the severity of his symptoms without an adequate basis. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks and citation omitted). "[T]he claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (internal quotation marks and citation omitted).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id*. at 1015 (internal quotation marks and citation omitted).

Moreno testified extensively regarding his diabetes and related pain in his feet, knees and hands. AR 39-46. As Moreno put it, "Diabetes, it has – it has a long arm and a lot of effects on me from my feet to my knees to my hands." AR 43. He repeatedly gets ulcers on the soles of his feet. AR 44. Each ulcer begins with pain in the bottom of the foot that travels up the leg to the groin. *Id*. Moreno feels like someone is stabbing his feet when this occurs. AR 43. He is treated with antibiotics, and with a drug called gabapentin to keep the nerves from acting up. AR 43-45. That treatment does not make the pain go away, it just makes it more bearable. AR 43. Moreno suffers sharp pain in his feet if he sits for more than an hour, and he must get up to walk for a bit. AR 45. However, he also has pain in his knees that makes walking painful. AR 40.

Moreno can drive, but only approximately ten minutes to the grocery store. AR 42. He has installed stepboards on his truck to help him get in and out of the truck. *Id*. He is able to cook regularly, by keeping a stool in the kitchen to rest. AR 47. He can stand over the stove or sink for

fifteen to thirty minutes at a time. *Id.* He spends approximately thirty minutes a day in his garden, watering plants and directing his nephew on lifting and carrying tasks. AR 48-49.

The symptoms described by Moreno would have "more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686. When applying the requisite two-step analysis to Moreno's testimony, the ALJ acknowledged at the first step that "the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms." AR 19. The ALJ did not make a finding of malingering. Thus, at the second step the ALJ could reject Moreno's testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citation omitted). Rather than identifying specific record evidence and explaining how it undermined Moreno's testimony, however, the ALJ merely stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." AR 19. The ALJ then set forth a two-page summary of medical evidence in the record, the majority of which was generated after Moreno's date last insured of June 30, 2012, without tying any of that evidence to Moreno's alleged symptoms. AR 19-20. The Ninth Circuit has made clear that an ALJ must specifically identify which testimony he found not credible, and why, in order to satisfy the applicable standard. *See Brown-Hunter*, 806 F.3d at 493. The Court concludes that the ALJ failed to satisfy this standard for rejecting Moreno's symptom testimony.

The Commissioner asserts five bases for concluding that the ALJ properly rejected Moreno's testimony regarding the severity of his symptoms. First, the Commissioner cites the ALJ's statements that there was a "paucity . . . of medical evidence" to support Moreno's claim of disability, and that Moreno's alleged symptoms were not "entirely consistent." AR 18-19. The referenced statements are purely conclusory. They are not supported by any specific references to the record and therefore do not satisfy the requirements set forth in *Garrison* and *Brown-Hunter*.

Second, the Commissioner asserts that the ALJ's rejection of Moreno's symptom testimony is supported by the ALJ's discussion of Moreno's issues with alcohol. The ALJ did note that Moreno had lost employment due to alcohol use in 2007 – before the alleged onset date

9

of January 5, 2008 – and that he drank heavily through 2019. AR 18-19. However, the ALJ did not cite alcohol use as a basis for disbelieving Moreno's testimony, nor did the ALJ identify any particular portions of Moreno's testimony that he found to be undermined by Moreno's alcohol use.

Third, the Commissioner points to the ALJ's statement that Moreno was noncompliant with his diabetes medication, arguing that an ALJ may draw reasonable conclusions about the extent of a claimant's symptoms based on the claimant's noncompliance with treatment. The ALJ found that Moreno was noncompliant with diabetes medication in September 2012 and October 2012, after his date last insured. AR 19. However, the ALJ did not indicate that his rejection of Moreno's testimony regarding his symptoms was undermined by Moreno's failure to take diabetes medication after his date last insured.

Fourth, the Commissioner asserts that the ALJ considered Moreno's activities that were inconsistent with his alleged disability, pointing to the ALJ's reference to Moreno's emergency room visit in July 2014 to remove a fishing hook that become stuck in his back when his kayak tipped over during a fishing excursion. AR 20. The ALJ did not state that this incident undermined Moreno's symptom testimony, nor did he identify any particular symptom testimony he believed to be called into question. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493.

Fifth, the Commissioner asserts that the ALJ did not rely solely on a lack of medical evidence in rejecting Moreno's symptom testimony. The Court cannot determine what evidence the ALJ relied on in rejecting Moreno's testimony, since the ALJ failed to identify any specific portions of the testimony or explain why those portions were not credited.

The Court finds that the ALJ erred in rejecting Moreno's testimony, and that the Commissioner's arguments to the contrary are without merit.

### C.     Remand for Further Proceedings is Appropriate

Having concluded that the ALJ committed the errors discussed above, the Court must decide whether the errors are harmless and, if not, the appropriate remedy. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error,

the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (internal quotation marks and citations omitted). Here, the errors were not harmless, because they were key to the step two determination upon which the ALJ based his denial of benefits. Moreover, the Court cannot discern the agency's path absent appropriate consideration of all relevant evidence of record. The Court therefore must determine the appropriate remedy.

In his motion, Moreno requests remand for payment of benefits or, alternatively, remand for further proceedings. A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495 (internal quotation marks and citation omitted). Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy." *Id*. (internal quotation marks and citation omitted).

The second and third factors are not met here. The ALJ reached only step two in the five step sequential analysis required for a disability determination. As discussed herein, the ALJ did not identify substantial evidence in the record to support his step two determination that Moreno did not have a severe impairment or combination of impairments prior to his date last insured. Even if this Court were to credit Moreno's evidence regarding the severity of his impairments, Moreno would not be entitled to benefits absent favorable determinations at steps three, four, and five. A remand for further proceedings is most appropriate here.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Moreno's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court REVERSES the denial of benefits and REMANDS for further administrative proceedings consistent with this order.

//

//

IV. **ORDER**

    (1)    Plaintiff Moreno's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

    (2)    Defendant Commissioner's motion for summary judgment is DENIED;

    (3)    The denial of benefits is REVERSED; and

    (4)    The matter is REMANDED to the Commissioner for further proceedings consistent with this order.

Dated: February 24, 2022

_____
BETH LABSON FREEMAN
United States District Judge